**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHALEY MARTINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-1249-RHH |
| | ) | |
| | ) | |
| FRANK J. BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiff Shaley Martini's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 8.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's denial of Martini's application.

### I.    Background

On or about March 14, 2018, Martini applied for DIB, alleging she has been unable to work due to disability since February 8, 2018. (Tr. 154, 165.) Martini alleged disability due to arthritis, spinal stenosis, degenerative disc disease, foraminal narrowing, and facet syndrome. (Tr. 154.) Her application was initially denied. (Tr. 153-164.) Then, she filed a request for Hearing by

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano shall be substituted for Carolyn Colvin as the defendant in this suit. *See* 42 U.S.C. § 405(g).

Administrative Law Judge (ALJ). (Tr. 200-201.) On August 12, 2019, the ALJ held a hearing on Martini's claim. (Tr. 124-152.) Martini was represented by counsel at the hearing, and an impartial vocational expert both testified. *Id.*

In a decision issued on October 25, 2019, the ALJ found Martini was not disabled as defined in the Act from the alleged onset date through the date she was last insured. (Tr. 169-185.) On August 21, 2020, the Appeals Council granted Martini's request for review of the ALJ's decision, noting that the ALJ erred in determining Martini's date last insured.[2] (Tr. 258-262.) On October 5, 2020, the Appeals Council entered a decision denying Martini's claim for benefits, largely adopting the ALJ's findings and conclusions. (Tr. 1-8.)

After exhausting her claim, Martini filed a Complaint in the United States District Court, Eastern District of Missouri, Case No. 4:20-cv-1711-CDP on December 3, 2020. (Tr. 1063.) The United States District Judge issued an order and Judgment remanding this action to the ALJ for further evaluation. (Tr. 1067-1085.) On May 20, 2024, following a second hearing, the ALJ issued another unfavorable decision. (Tr. 1004-1018.)

## II.    Evidence Before the ALJ

The Court adopts the statement of facts set forth in Martini's statement of facts (ECF No. 20-1) and Defendant's response (ECF No. 23-1). Together, these statements provide a fair description of the record before the Court.

Martini worked as a hair stylist for thirty years. She had been able to work through back and neck pain for several years, but she stopped working in February 2018 because of worsening

---

[2] The Appeals Council found Martini was not disabled, but that it was an error for the ALJ to find her date last insured was December 30, 2018, when social security records show she is insured through December 31, 2018. (Tr. 259.) The correction of the date last insured did not change the outcome of the decision because the ALJ discussed the relevant evidence in the record, including evidence dated after September 30, 2018, to and including December 31, 2018. (Tr. 259.)

pain, including radiating pain to her arms and legs. MRIs of her cervical, thoracic, and lumbar spine showed mild to moderate impairments of the spine, including stenosis, osteoarthritis, and degenerative changes. During an examination in May 2018, Martini's primary care provider, Kristina Plesons, NP, instructed Martini to not lift more than ten pounds or stand longer than one hour at a time. From February through September 2018, Martini's treatment modalities included nerve blocks, injection therapy, and physical and aquatic therapy, from which she obtained some relief. Medication included Gabapentin and Celebrex, from which she likewise obtained some relief. Findings from a neurosurgical consultation in September 2018 showed tenderness along the sacroiliac joints and mild limitations in cervical range of motion. It was determined that she was not a surgical candidate. In November 2018, Martini underwent right-sided cervical radiofrequency ablation from which she obtained significant relief of her neck pain. She continued thereafter with injection therapy and nerve blocks to her lumbar spine. She underwent left-sided radiofrequency ablation of the lumbar spine in March 2019, from which she obtained relief. In July and August 2019, Martini's treating pain specialist, Dr. Chad Shelton, noted that Martini responded very well to the ablation procedures and continued to do reasonably well overall.

Martini also complained of knee and shoulder pain. MRIs of the bilateral knees taken in November 2018 showed a tear of the medial meniscus of the right knee with mild cartilage thinning, and mild ligament sprain of the left knee with moderate cartilage thinning and mild edema. Martini received a steroid injection to the right knee at that time and was advised to focus on resolving her back and neck pain. An MRI of the right shoulder taken in May 2019 showed tendinopathy and bursitis with tear of the labrum. Martini was diagnosed with right shoulder impingement syndrome and right tennis elbow. She underwent injection therapy and was given instruction as to home remedies.

Additional specific facts will be discussed as needed to address the parties' arguments.

### III.    Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled.  20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(v).

## IV.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Martini met the insured status requirements through September 30, 2018, and she did not engage in substantial gainful activity during the period from her alleged onset date of February 8, 2018, through her date last insured of September 30, 2018. (Tr. 1006.) Next, the ALJ found that Martini had the following severe impairments: degenerative disc disease, osteoarthritis, and chronic pain syndrome. (Tr. 1006). The ALJ found Martini's autoimmune thyroiditis, hypertension, insomnia, depressive disorder, and anxiety disorder were not severe impairments. (Tr. 1007.)

The ALJ determined that Martini did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 1008.) The ALJ also determined that Martini had the residual functional capacity to perform light work[3] with the following additional limitations:

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

> She can frequently climb ramps and stairs, but she cannot climb ladders, ropes, or scaffolds. She cannot balance as defined by the Selected Characteristics of Occupations. She can occasionally stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the right arm and frequently reach in all other directions bilaterally. She can have no exposure to unprotected heights or hazardous machinery and only occasional exposure to extreme cold or vibration.

(Tr. 1009.) The ALJ found that Martini was unable to perform any past relevant work through the date last insured. (Tr. 1016.) Martini was 52 years old, which is defined as an individual closely approaching advanced age, on the date last insured, and she has at least a high school education. (Tr. 1016.) The ALJ found that transferability of job skills is not material. (Tr. 1016.) Based on the foregoing, the ALJ found that there were jobs exist in significant numbers in the national economy that Martini could perform. (Tr. 1017.) These jobs include cashier (Dictionary of Occupational Titles (DOT) No. 211.462-010, light exertion level, SVP 2, unskilled, approximately 62,000 jobs in the national economy), product inspector (DOT No. 529.687-186, light, SVP 2, unskilled, approximately 62,000 jobs in the national economy), and packer (DOT No. 920.685-026, light, SVP 2, unskilled, approximately 45,000 jobs in the national economy). (Tr. 1017.) Therefore, the ALJ concluded that Martini was not disabled, as defined in the Act, from February 8, 2018, through September 30, 2018. (Tr. 1018.)

## V.    Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v.*

- 6 -

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## VI.    Discussion

Martini argues that the ALJ erred in evaluating the medical opinion evidence and in formulating an RFC determination. Defendant responds that the ALJ complied with the applicable regulations and created an RFC that is supported by substantial evidence on the record as a whole.

### A.  Medical Opinion Evidence

Martini argues that the ALJ erred in evaluating the medical opinions of treating providers Dr. Schoenwalder and Nurse Practitioner Plesons and non-examining state agency consultant Dr.

Debroy. Defendant responds that the ALJ properly evaluated the medical opinions and findings under the new regulations.

When evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any weight to opinion evidence. 20 C.F.R. § 404.1520(a). Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors. 20 C.F.R. § 404.1520c(b)(2). Of these factors, an ALJ must explain how he considered the factors of supportability and consistency in his decision but need not explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2).[4]

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In articulating how she considers the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, 2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).

The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In considering opinion evidence, an ALJ can be justified in rejecting an opinion if it contains no explanation of limitations despite containing areas where the

---

[4] The other factors include the relationship with the claimant, specialization, and other factors which can include whether additional evidence was submitted after the date of the opinion. 20 C.F.R. § 404.1520c(c)(3-5). An ALJ is not required to address all factors in her opinion.

doctor could explain the limitations found. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form"); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).

<u>Michael Schoenwalder, D.O.</u>

Dr. Schoenwalder completed a medical source statement dated May 16, 2018. (Tr. 512-517.) He reported seeing the patient for three months for chronic pain, thyroid, and hormones. He noted treatment of steroid injections, physical therapy, and medication management with some improvement. He reported that MRIs of Martini's cervical, thoracic, and lumbar spine showed arthritis, spinal stenosis, and bulging disc; that laboratory testing showed abnormal TSH; and that Martini's symptoms included "chronic generalized joint pain, worse in spine, chronic fatigue, depression/anxiety, reduced mobility, insomnia." (Tr. 512.) Dr. Schoenwalder opined that she can sit not greater than thirty minutes and stand not longer than thirty minutes at a time due to chronic low back pain, radiculopathy, and cervical and thoracic pain. He opined she can walk 1-2 blocks without stopping, she can lift and carry five to ten pounds during an eight-hour period, and can lift and carry five to ten pounds regularly/daily. She needs frequent position changes for pain management and needs to lie down during the day. He further opined that she could rarely reach above her shoulders and down toward the floor; could rarely handle objects with her fingers; could

frequently reach down to waist level; and had difficulty bending, squatting, and kneeling, and with turning at the hip and cervical spine. He described her pain as constant and level 5, and opined she could not work. (Tr. 516.)

> The ALJ found his opinions were not persuasive. The ALJ explained:
> The opinions are not supportable. He noted pain symptoms, imaging, and varied treatments, but he failed to explain how and why those impairments and symptoms limited her in the severe manner he set forth nor did he cite to specific objective findings in support thereof. His opinions are also not consistent with the medical evidence. The majority of his exams showed normal mobility in the extremities, no joint tenderness, and normal gait (Exhibit 3F/3-4, 13; 7F/12). Further, the neurosurgical and orthopedic exams noted normal gait, some limitations in range of motion at times, no weakness in the extremities, and significant relief with pain management treatment that are inconsistent with the limitations he set forth in sitting, standing, lifting, walking, handling, and reaching (Exhibit 6F/2; 8F/22, 29; 10F/5; 15F). His opinions indicating an inability to work are conclusory and invade the province of the decision-maker.

(Tr. 1015.)

Martini argues that Dr. Schoenwalder supported his opinions by providing a detailed assessment referencing objective MRI findings and describing treatment modalities, including steroid injections and physical therapy, which provided only partial relief—an indication of persistent functional limitations. Martini's argument merely gives an alternative view of the evidence, it does not render the ALJ's evaluation of the opinion deficient. The standard of review is whether substantial evidence supports the ALJ's findings, not whether substantial evidence supports contrary findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome.") (citation omitted).

"An ALJ's discussion of [a medical source's] treatment and examination notes reflects the ALJ's consideration of the supportability factor with respect to their opinions." *Stephanie B. v. Kijakazi*, No. CV 22-837 (JWB/DTS), 2023 WL 3394594, at *1 (D. Minn. May 11, 2023) (citation

omitted). Here, the ALJ explained that the majority of exams conducted at Dr. Schoenwalder's office showed normal mobility in all extremities, no joint tenderness, and normal gait. (Tr. 437-438, 442, 447, 541.) She considered that some exams noted limitations in range of motions at times, but Martini still exhibited normal strength, even when she complained of pain. The ALJ discussed the imaging relied on by Dr. Schoenwalder, noted a spinal provider found the chronic spondylosis changes in all three areas of the spine were "relatively minor," and pointed out that Dr. Schoenwalder's exam records from around the same time indicated she could undergo exercise testing or participate in an exercise program. capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (a physician's recommendation to exercise suggests that a claimant has an increased functional capacity). Lastly, it was not erroneous for the ALJ to discredit Dr. Schoenwalder's opinion regarding Martini's inability to work because that determination is reserved to the Commissioner. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner."). The ALJ complied with the regulations in her evaluation of Dr. Schoenwalder's opinions.

<u>Kristina Plesons, N.P.</u>

In a form titled Waiver Benefit Attending Physician's Statement for a Continuing Disability and dated August 17, 2023, NP Plesons provided her opinions regarding Martini's functional capacity. (Tr. 1362-1363.) NP Plesons wrote she has treated Martini since 2016 and sees her every six months. Martini's current diagnosis is tendonitis, osteoarthritis, cervical stenosis, bulging disc, and facet syndrome. Symptoms include limited range of motion, chronic pain, and inability to sit/stand or hold a position for a long period of time. For objective findings, NP Plesons points to an MRI showing arthritis stenosis. For current limitations and restrictions,

NP Plesons wrote "limited sitting, standing, reaching, pushing, pulling, change positions and rest when needed." In checkbox format, NP Plesons opined Martini is unable to perform any job duties in her regular occupation and could not return to work in any occupation, even a sedentary job, at this time. She opined she would never be able to resume work. (Tr. 1362.) She opined that in an eight-hour workday, Martini can sit one consecutive hour and two total hours; stand thirty minutes consecutively and two total hours; and walk thirty minutes consecutively and two total hours. (Tr. 1363.) She also found she can lift a maximum of less than ten pounds, and has limited reaching, pulling, lifting, limited time in static position, sitting, standing, hold neck in static position, requires frequent breaks. (*Id.*)

> The ALJ found NP Plesons' opinions were not persuasive:
>
> The opinions are not supportable. While she noted numerous impairments and symptoms, she failed to provide any objective evidence or observations that supported the limitations in sitting, standing, reaching, pushing, pulling, and maintaining positions for extended periods. Her opinions are also not consistent with the medical evidence. The evidence shows some limitations in range of motion and generalized muscle and joint pain, but she also had normal gait and station and normal strength in the extremities that are inconsistent with the limitations she set forth. Her full strength contradicts the lifting limitation and there was little to no indication in exams that she was in acute distress, uncomfortable sitting or moving, or needed to change positions (Exhibit 3F/3; 4F/4; 15F). Finally, given her opinions indicating the ability to sit only 2 hours a day and stand/walk for one hour a day, Ms. Plesons' opinions seem to indicate she would spend the remainder of her day lying down since she could not sit, stand, or walk, and the claimant herself did not indicate that level of incapacity (Exhibit 5E; testimony). The undersigned also notes that the majority of her statements were offered nearly five years after her date last insured and well outside of the relevant time period. Her statements indicating the claimant was unable to perform or return to work are conclusory statements that invade the province of the Commissioner.

(Tr. 1014-1015.)

The ALJ was justified in finding NP Plesons' opinions unpersuasive because of their conclusory nature, inconsistency with the record as a whole, and lack of clarity regarding time period. As an initial matter, the Eighth Circuit Court of Appeals has clearly stated that a medical

checkbox opinion is "entitled to relatively little evidentiary value on its face" when it is conclusory and cite[s] no medical evidence, and provide[s] little to no elaboration.'" *Swarthout*, 35 F.4th at 611 (quoting *Wildman v. Astrue*, 596 F3d 959, 964 (8th Cir. 2014). NP Plesons' opinion fills in questions and checks boxes regarding Martini's "current symptoms," "current limitations and restrictions," and "current extent of disability." NP Plesons does not specify what medical records support her opined restrictions, nor does she specify whether these current symptoms, limitations, and restrictions are the same as Martini's condition during the relevant eight-month time period in 2018. The ALJ appropriately explained that NP Plesons' conclusions were contradicted by her examinations of Martini and Martini's own reports of her capabilities. Because NP Plesons' opinion was conclusory, lacked support, outside of the relevant time frame, and opined on matters reserved for the Commissioner, the ALJ was free to disregard it.

<u>Renu Debroy, M.D.</u>

Dr. Debroy is a non-examining doctor who issued an opinion on June 18, 2018. (Tr. 157-62.) Dr. Debroy reported that Martini had the medically determinable severe impairment of degenerative disc disease, which limited her to occasional lifting of twenty pounds and frequent lifting of ten pounds. Dr. Debroy opined that Martini could sit for a total of about six hours in an eight-hour workday and could stand and/or walk for a total of about six hours in an eight-hour workday. Dr. Debroy opined that Martini could frequently climb ramps and stairs and could occasionally climb ladders, ropes, or scaffolds. She further opined that Martini could frequently balance and occasionally stoop, kneel, crouch, and crawl. She opined that Martini was limited to frequent reaching overhead bilaterally but otherwise had no manipulative limitations. (Tr. 157-62.)

The ALJ found that Dr. Debroy's opinions "limiting her work to light exertional level with frequent ramps and stairs and occasional stooping, kneeling, crouching, and crawling are persuasive." (Tr. 1014.) "However, his opinions indicating that she could occasionally climb ladders, ropes, and scaffolds are inconsistent with her reported neck, shoulder, and knee pain (Exhibit 4F/4; 6F/1; 7F/28-29)." (*Id.*) The ALJ also found the evidence supports greater limitations in reaching than he assessed given her chronic neck and shoulder pain. (*Id.*)

Martini argues that the ALJ failed to adequately address consistency because she found Dr. Debroy's opinion was supported by imaging showing degenerative disc disease and arthritis, yet found Dr. Schoenwalder and NP Plesons' respective opinions not persuasive "despite their reliance on the very same imaging results," rendering the ALJ's conclusions internally inconsistent. Martini's argument ignores the fact that Dr. Debroy's opinion imposed less functional restrictions than those of Dr. Schoenwalder and NP Plesons. The imaging reviewed by Dr. Debroy included x-rays of Martini's bilateral hands, shoulders, knees, feet, and thoracic spine (Tr. 418-422), and MRIs of the thoracic, cervical, and lumbar spine (Tr. 382-387). The x-rays were unremarkable, and the cervical and lumbar spine MRIs revealed mild to moderate degenerative changes similar to imaging taken in 2012 and 2013. The thoracic spine MRI also revealed mild degenerative changes and no thoracic canal stenosis, but there was no previous imaging for comparison. Dr. Debroy noted the "relatively minor" degenerative changes, and the ALJ found this imaging supported Dr. Debroy's opinions regarding light exertional level and limiting Martini to frequently climbing ramps and stairs and occasionally stooping, kneeling, crouching, or crawling.

In contrast, Dr. Schoenwalder and NP Plesons relied on the same imaging to find that Martini can only sit or stand for thirty minutes or one to two hours per day. Contrary to Martini's argument, the ALJ's finding that Dr. Debroy's opinion was persuasive and Dr. Schoenwalder and

NP Plesons' opinions were not persuasive does not render the ALJ's treatment of the imaging inconsistent. Rather, it was reasonable for the ALJ to conclude that the mild to moderate imaging findings supported Dr. Debroy's opinion and were inconsistent with the more severe functional restrictions opined by Dr. Schoenwalder and NP Plesons.

Martini also criticizes the ALJ's reliance on Dr. Debroy's opinion because Dr. Debroy did not identify severe impairments in the shoulder or knees and limited overhead reaching bilaterally, and because the ALJ found Dr. Debroy's opinion persuasive, then gave an RFC that strayed from Dr. Debroy's opined RFC without discussion. These arguments ignore the nuances of the ALJ's evaluation. The ALJ did not adopt Dr. Debroy's opinion in its entirety, nor was she required to. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all of a medical opinion."); *Burg v. O'Malley*, No. 4:23-CV-00329-SRC, 2024 WL 1253822, at \*5 (E.D. Mo. Mar. 25, 2024) (the regulations do not "require the ALJ to mechanically address each part of the prior administrative medical findings or adopt each limitation identified by persuasive medical sources when determining a claimant's RFC.")

Moreover, not only did the ALJ consider Martini's reported shoulder and knee impairments, the ALJ crafted an RFC with *greater* functional restrictions than those identified by Dr. Debroy to account for said impairments. In imposing an RFC which includes that Martini cannot climb ladders, ropes, or scaffolds and cannot balance, the ALJ explicitly stated  Dr. Debroy's opinions regarding occasional climbing were inconsistent with Martini's reported neck, shoulder, and knee pain, and cited to records reflecting decreased range of motion in the neck on exam, complaints of neck, shoulder, and knee pain. (Tr. 471, 519, 1014.) Then, in limiting her to occasionally reaching overhead with the right arm instead of frequently as opined by Dr. Debroy, the ALJ explained that Martini's chronic neck and shoulder pain supported greater limitations than

those assessed by Dr. Debroy. The Court finds that the ALJ complied with the regulations in evaluating the supportability and consistency of Dr. Debroy's opinion.

In sum, the Court concludes the ALJ properly evaluated the medical opinions in compliance with the regulations.

### B. Formulation of the RFC

Martini argues that the ALJ's RFC determination is flawed because the ALJ improperly substituted her own medical judgment, failed to explain how the medical findings supported the RFC, and improperly discounted Martini's subjective complaints. The Court disagrees. Viewing the record in the light most favorable to the ALJ's decision, the ALJ's decision falls within the available zone of choice and is supported by substantial evidence on the record as a whole. *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024). The ALJ based the RFC determination on Martini's ability to independently perform daily activities; her frequently-noted normal range of motion and strength and steady gait; and inconsistencies between her subjective allegations and the evidence in the record. The Court concludes that in reaching his RFC determination, the ALJ properly considered this evidence.

The RFC "'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities[.]'" *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (Soc. Sec. Admin. July 2, 1996)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal quotation marks and citation omitted). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record

cannot stand." *Frederick v. Berryhill*, 247 F. Supp. 3d 1014, 1021 (E.D. Mo. 2017) (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

Martini argues that the ALJ failed to explain how the objective evidence and exam findings in the record related to Martini's knees and shoulder were considered and accommodated in the RFC, and the ALJ failed to discuss how the evidence supports her conclusions. In imposing an RFC of light work with additional postural, manipulative, and environmental limitations, the ALJ explained:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence including imaging results, physical exams, and the longitudinal treatment history. The claimant's degenerative disc disease, osteoarthritis, and chronic pain syndrome were considered in limiting her to work at the light exertional level. Additional postural and environmental limitations were included to account for joint pain and limitations in the range of motion of the spine. Manipulative limitations were also included to account for shoulder pain when reaching overhead and other reaching and limitations in range of motion. Given her right shoulder and trapezius pain, overhead reaching was limited to occasional on the right, and bilateral reaching was limited to frequent to account for tenderness in both shoulders. The medical records showed treatment in the form of pain management medications, physical therapy, and injection therapy for neck, back, shoulder, and knee pain. She often had limitations in the range of spinal motion and occasionally in the shoulder motion, as well as crepitus in the knees. However, she also generally had intact strength, no sensory loss, and no loss of motion in the extremities. She also had no joint abnormalities in exams. She consistently had a normal gait. Finally, she reported significant improvement with injection therapy and radiofrequency ablation that reduced her pain and allowed greater mobility.

(Tr. 1016.) As discussed above and contrary to Martini's contentions, the ALJ explicitly considered Martini's knee and shoulder impairments and partially rejected Dr. Debroy's medical opinion regarding postural limitations because Dr. Debroy did not have the benefit of medical records that supported greater limitations due to her knee and shoulder pain. The Court finds no error on this basis.[5]

---

[5] Martini also argues that "the ALJ found plaintiff could stand and walk a total of 6 hours in an 8-hour workday, without explanation." (ECF No. 20, at 9.) This argument is inapposite because the ALJ in this case did not include in

Martini also relies on *Combs v. Berryhill,* 878 F.3d 642 (8th Cir. 2017) to support her contention that the ALJ improperly drew her own inferences from medical records, but her reliance is misplaced. There, the ALJ evaluated opinions from two reviewing physicians who considered the same evidence and came to conflicting views of the claimant's ability to function. In giving greater weight to the less limiting opinion, the ALJ cited to the claimant's treating physicians' notations of "no acute distress" and "normal movement of all extremities" in giving more weight to one reviewing physician's opinion over the other. The Eighth Circuit found that the ALJ failed to develop the record because the ALJ failed to seek clarification as to what "no acute distress" and "normal movement" meant in terms of the claimant's ability to function, instead improperly relying on his own interpretation of the treating physician's notations when determining the weight to assign the medical opinions. *Combs* reasoned that in light of the claimant's history of rheumatoid arthritis, the relevance of the two notations was unclear and remand was necessary for the ALJ to investigate the claimant's ability to function in the workplace. *Id.* In other words, the ALJ used general statements from another physician to determine a precise physical limitation in the claimant's RFC over which equally reliable experts were divided.

Here, the ALJ did not determine the weight to assign to NP Plesons' opinion by imposing the ALJ's own interpretation of notations made by other physicians. Rather, NP Plesons' own records reflected consistent observations that on exam, Martini was in "no acute distress" and demonstrated normal gait and station, range of motion of extremities, and strength. (Tr. 437, 441-442, 446-447, 454, 460.) The ALJ considered these observations and weighed them in light of

---

the RFC that Martini could stand or walk for six hours in an 8-hour workday. Additionally, in this Circuit, "[a] two-hour standing restriction is not an absolute bar to performing 'light work.'" *See Schwandt v. Berryhill*, 926 F.3d 1004, 1013 (8th Cir. 2019) (citing *Fenton v. Apfel*, 149 F.3d 907, 911 (8th Cir. 1998)); *see also Lisa D. v. Kijakazi*, No. 8:21CV294, 2022 WL 952778, at *6 (D. Neb. Mar. 30, 2022) ("Contrary to [Plaintiff's] assertion, there is nothing in SSR 83-10 or any other proffered authority that sets out a minimum walking or standing requirement to qualify for light work.").

other evidence showing some limitations in range of motion and generalized muscle and joint pain and ultimately found the evidence did not support the restrictions identified by NP Plesons. As discussed above, the ALJ's evaluation of NP Plesons' opinion was supported by substantial evidence.

Martini also argues that the ALJ improperly discounted her subjective complaints and instead the ALJ merely relied on imaging results and physical exam findings and failed to adequately discuss why Martini's consistent complaints of severe pain, need for frequent position changes, and inability to sit, stand, or walk for prolonged periods were not credible. The undersigned does not agree with Martini's characterization of the ALJ's assessment.

The Eighth Circuit instructs "[t]o assess [a claimant's] credibility, the ALJ [must] consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) (quotation and citations omitted). That said, "[a]n ALJ is not required to 'explicitly discuss each factor, and we will defer to credibility determinations that are supported by good reasons and substantial evidence.'" *Id.* (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citation omitted). "An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* Furthermore, an ALJ "may rely 'upon discrepancies between [a claimant's] allegations of pain and h[er] treatment history, medicinal selections, and daily activities in disregarding h[er] subjective complaints.'" *Id.* (quoting *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2001)). In evaluating the subjective reports, "the ALJ 'must examine the entire case record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.'" *Hahn v. Kijakazi*, No. 1:21-CV-17 SPM, 2022 WL 4534420, at *6 (E.D. Mo. Sept. 28, 2022) (citing SSR 16-3p, 2017 WL 5180304, at *4 (Soc. Sec. Admin. Oct. 25, 2017)).

Martini is correct that the ALJ discounted some of her subjective reporting. The ALJ explained: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinably impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 1011.)

The ALJ devoted a number of pages of her decision to analyzing Martini's self-reports, her daily activities, her treatment history, the medical evidence, in additional to notes and assessments from her medical providers. The ALJ stated that the medical evidence does not support the severity of her alleged limitations. She explained:

> While she reported to treatment providers a need to change positions and one treatment provider echoed the recommendation, the claimant's imaging results do not support the severity of limitations alleged. Her imaging results showed no more than mild to moderate abnormalities and laboratory testing was negative for inflammation markers or rheumatoid arthritis issues. Further, exams showed limitations in range of motion and tenderness, but she generally had intact strength and mobility. Further, while she had some crepitus in the knees, exams did not show joint swelling or abnormalities in the shoulders.

(Tr. 1011.) Indeed, the ALJ supported her determination by citing to Martini's treatment and progress with her symptoms. She considered Martini's complaints of constant and excruciating pain, but also considered that Martini reported improvement in pain to providers after injections, medial branch blocks, and with oral medications. Records from physical therapy and her primary care provider indicated she could participate in an exercise program.

An ALJ may also consider a claimant's daily activities as one of several factors when evaluating her subjective complaints. *See Swarthout v. Kijakazi*, 35 F.4th 608, 611–12 (8th Cir. 2022) (ALJ properly considered the claimant's activities, which included caring for personal hygiene, preparing simple meals, stretching and performing gentle exercises, driving, doing some laundry, and doing household chores in short increments). Here, in addition to the medical evidence, the ALJ discussed Martini's ordinary life activities, which she found showed a level of independent functioning that was inconsistent with an inability to work. The ALJ considered Martini's administrative hearing testimony and her Function Report. These pieces of evidence reflect many limitations but also some abilities. The ALJ noted that Martini said her medications made her confused and sleepy, and medication and pain affected her talking, memory, concentration, and understanding. As the ALJ explained, although Martini wore simple clothes to avoid pain and she indicated pain when raising her arms overhead to care for her hair, she also indicated she could shower and feed herself, as well as care for her pets and prepare meals. She did laundry and could no longer vacuum but did other light cleaning when her pain was at a lower level. Martini could go out alone, shop when her condition allowed, and drove when she wasn't drowsy from medication. (Tr. 1010.) She reported she could lift less than 10 pounds and stand for half an hour to an hour without breaks, and could walk for half an hour. She participated in physical therapy and in aquatic fitness sessions, and therapy records reflect Martini reported activities such as raking leaves (Tr. 750) and walking for exercise (Tr. 763, 764, 765, 774).

The evidence in this case reflects Martini regularly experienced pain, discomfort, and tenderness, but also demonstrated normal gait and strength, full range of motion in the spine and extremities, and improvement with oral medication, injections, a TENS unit, and physical therapy. During medical appointments she reported varying degrees of activity and pain, and in addition to

the conservative treatment above, her treaters recommended exercise programs and diet changes to improve pain and inflammation. Imaging reflected mild to moderate degenerative changes, and a spinal specialist identified minor chronic spondylosis changes and minimal degenerative changes. There is no evidence of surgical intervention or hospital visits due to disabling pain. Martini reported pain and drowsiness and activities including driving, light cleaning, preparing meals, and going out alone to shop for her needs. In light of the mixed examination findings and mixed reports regarding her capabilities and pain levels, substantial evidence supports the ALJ's conclusions, and the Court cannot reverse because some evidence supports a different conclusion. *See, e.g., Ross,* 92 F.4th at 780 (claimant's testimony regarding performing small repairs, brief work riding a lawn mower, and driving short distances, combined with his monthly trips to stores and his ability to fish, contradicts his testimony that his head, neck, and back disabilities completely prevent him from working in the national economy).

Additionally, despite having generally unremarkable physical exams and conservative treatment during the relevant time period, the ALJ limited Martini to light work with additional postural, manipulative, and environmental limitations, which imposes a significant limitation in itself, demonstrating that the ALJ considered her physical limitations in making the RFC determination. *See Choate v. Barnhart,* 457 F.3d 865, 869–70 (8th Cir. 2006) (restriction to light work with environmental restrictions considered to be significant limitation).

In sum, the ALJ's RFC determination is supported by substantial evidence and explained in adequate detail. While Martini may disagree with the ALJ's conclusion, this Court does not substitute its own judgment for that of the ALJ, even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[The Court's] task is not to reweigh the evidence, and [the

Court] may not reverse the Commissioner of the Social Security Administration's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 4042 (8th Cir. 1999) (emphasis added).

## VII. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. (ECF No. 1, 20.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 30th day of September, 2025.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE